# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| JEFFERY BROWN AND NICKI BROWN, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | Civil Action No. 4:23-cv-705 |
| v. | § | Judge Mazzant |
| | § | |
| PACCAR INC., | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant PACCAR Inc.'s Motion to Dismiss (Dkt. #5). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the Motion should be **GRANTED.**

## BACKGROUND

On August 7, 2023, Plaintiffs Jeffery and Nicki Brown filed a Complaint with the Court against Defendant PACCAR Inc. (Dkt. #4). As pleaded in Plaintiffs' Complaint, PACCAR designed, manufactured, assembled, and tested a 2000 Peterbilt Tractor (VIN#1XP5DB9X6YN516804) (the "Tractor") before selling it to Rush Truck Center in Phoenix, Arizona on November 30, 1999 (Dkt. #4 at ¶¶ 8–17). On January 14, 2019, Mr. Brown was operating the Tractor in Bryan County, Oklahoma, when he struck a defective expansion joint on the bridge crossing the Red River, causing him to lose control of the Tractor and roll over on the

roadway (Dkt. #4 at ¶¶ 9–11).[1] Mr. Brown suffered spinal injuries as a result of the accident (Dkt. #4 at ¶ 11). Plaintiffs allege that PACCAR is liable for Mr. Brown's injuries because, during the rollover, the Tractor's cab "crushed excessively, causing severe and permanent spinal injuries to Jeffery Brown" (Dkt. #4 at ¶ 11). Plaintiffs assert that PACCAR knew that accidents, like the one Mr. Brown suffered here, "[were] entirely foreseeable" and "well-known" (Dkt. #4 at ¶ 15).

Plaintiffs originally filed suit on November 12, 2019, in the 431st Judicial District Court of Denton County, Texas, then voluntarily dismissed the suit two months later (Dkt. #5-1, 5-3). On January 12, 2021, Plaintiffs filed a new complaint in the District Court of Bryan County, Oklahoma, against PACCAR and the Oklahoma Department of Transportation (Dkt. #5-4). PACCAR responded with a Motion to Dismiss for Want of Jurisdiction, as PACCAR claims the accident occurred in Texas, not Oklahoma (Dkt. #4 at ¶ 6). The district court denied PACCAR's motion (Dkt. #4 at ¶ 6). PACCAR then filed an Application for Writ of Prohibition with the Oklahoma Supreme Court (Dkt. #5-7). The Oklahoma Supreme Court granted PACCAR's writ and prohibited personal jurisdiction over PACCAR in Oklahoma (Dkt. #5-10). The claim was then filed in the 467th Judicial District Court of Denton County, Texas, and removed to this Court on diversity grounds (Dkt. #1).[2]

---

[1] In its Motion to Dismiss, PACCAR provides evidence from a land surveyor suggesting that the accident took place in Texas, not Oklahoma (Dkt. #5 at p. 8). In their Response, Plaintiffs explain, "[t]here was, and continues to be, a dispute as to where exactly in the process Mr. Brown incurred the injuries made the basis for suit (in Texas, Oklahoma, or a bit of both) but for this Response, save when specifically addressed, the same is not relevant" (Dkt. #10 at p. 8). In any event, the Oklahoma Supreme Court holds that jurisdiction is proper in Texas, not Oklahoma (Dkt. #4 at ¶ 6).

[2] As pleaded in PACCAR's Notice of Removal, both Plaintiffs are domiciled in Sumner, Texas (Dkt. #1 at p. 2). Therefore, both Plaintiffs are Texas citizens (Dkt. #1 at p. 2). PACCAR, on the other hand, is a Delaware corporation with its principal place of business in Washington (Dkt. #1 at p. 2). Accordingly, the parties are completely diverse. 28 U.S.C. § 1332(a). Further, the amount in controversy is satisfied because Plaintiffs seek compensatory damages totaling over $1,000,000—far exceeding the amount in controversy threshold for diversity jurisdiction. *Id.*; (Dkt. #1 at p. 2).

On August 14, 2023, PACCAR filed a 12(b)(6) Motion to Dismiss for Failure to State a Claim upon which Relief can be Granted (Dkt. #5). Plaintiffs filed their Response on September 11, 2023 (Dkt. #10). Then, one week later, PACCAR filed its Reply on September 18, 2023 (Dkt. #12). On December 1, 2023, Plaintiffs filed their First Sur-Response to PACCAR's Motion to Dismiss (Dkt. #18). On June 11, 2024, Plaintiffs filed their Supplemental Sur-Response to PACCAR's Motion to Dismiss (Dkt. #19). On November 7, 2024, the Court ordered the parties to submit supplemental briefing on Texas Civil Practice and Remedies Code § 71.031 (Dkt. #20). Both parties submitted their respective briefing on November 14, 2024 (Dkt. #21; Dkt. #22).

## LEGAL STANDARDS

A party may seek dismissal in a pretrial motion based on any of the defenses set out in Rule 12(b) of the Federal Rules of Civil Procedure. FED. R. CIV. P. 12(b); *see also Albany Ins. Co. v. Almacenadora Somex*, 5 F.3d 907, 909 (5th Cir. 1993).

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that

are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

The crux of the instant dispute is a conflict-of-laws analysis. In this endeavor, the Court faces a proverbial fork in the road. The Court, sitting in diversity, could turn right and apply Texas law. If it so chooses, the Court would have no choice but to dismiss Plaintiffs' action as time-barred under Texas's fifteen-year statute of repose. TEX. CIV. PRAC. & REM. CODE ANN. § 16.012(b). On the other hand, the Court could take the road less traveled, turn left, and apply Arizona law, which would allow Plaintiffs' claims to survive as Arizona law does not have a statute of repose. The Court does not approach this analysis lightly, as its decision could foreclose Plaintiffs' relief. As demonstrated by the sections that follow, Texas's statute of repose applies to bar Plaintiffs' claims.

In arriving at its conclusion, the Court must perform a two-step inquiry. First, the Court must perform a choice-of-law analysis. After determining which state's law applies, the Court must apply that law to the facts of this case. The Court addresses each prong of the analysis in turn.

## I.    Conflict of Laws

The first step is for the Court to determine which state's law applies. The options before the Court are Texas and Arizona. PACCAR urges the Court to apply Texas substantive law (Dkt. #12). In support of its position, PACCAR notes that the injury occurred in Texas, Plaintiffs are Texas citizens, and Texas policy favors the application of Texas law (Dkt. #12 at pp. 3–13). Therefore, according to PACCAR, Texas law is the only logical—and proper—law to apply. Plaintiffs, on the other hand, see the issue quite differently. Plaintiffs ask the Court to apply Arizona law because the Tractor entered the stream of commerce in Arizona, not Texas (Dkt. #10 at pp. 6–14). The consequences of the Court's decision with respect to this issue are serious, as the viability of Plaintiffs' claims hangs in the balance. Application of Texas law warrants dismissal, while application of Arizona law would allow their claims to survive. *See infra* Section II.

A federal court sitting in diversity must apply the choice-of-law rules of the forum state. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Texas courts use the Restatement (Second) of Conflict of Laws to resolve choice-of-law questions and select the substantive law that governs a case. *Stevenson v. Ford Motor Co.*, 608 S.W.3d 109, 116 (Tex. App.—Dallas 2020, no pet.). "[The Restatement] provides two sequential analyses, the second of which is conditioned on the inapplicability of the first." *Id.* Section 6 of the Restatement reads:

    (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
    (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
        (a) the needs of the interstate and international systems,
        (b) the relevant policies of the forum,
        (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
        (d) the protection of justified expectations,
        (e) the basic policies underlying the particular field of law,
        (f) certainty, predictability and uniformity of result, and
        (g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (AM. L. INST. 1971).

In short, courts must apply local choice-of-law statutory provisions unless doing so would be unconstitutional. *Stevenson*, 608 S.W.3d at 117 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(1) cmt. a (AM. L. INST. 1971)). While Texas generally applies the "most significant relationship" test, the Texas Legislature provides a statutory provision that determines the choice of law in this case.[3] TEX. CIV. PRAC. & REM. CODE ANN. § 71.031; *Hyde v. Hoffmann-La Roche, Inc.*, 511 F.3d 506, 511 (5th Cir. 2007) (applying Texas law to a products liability action while sitting in diversity). "When deciding which state's law should apply to a suit for injury or death occurring

[3] Initially, neither party briefed the Court on the applicability—or lack thereof—of Texas Civil Practice and Remedies Code § 71.031. In fairness, the Court allowed the parties to brief the issue (Dkt. #21; Dkt. #22). After reviewing the parties' briefing, the Court determines that § 71.031 applies to decide the choice of law issue this case presents.

outside Texas, Texas courts apply Texas's choice-of-law rules." *Stevenson*, 608 S.W.3d at 119.

Specifically, the applicable choice-of-law rule governing this case is codified in Texas Civil Practice

and Remedies Code § 71.031. Section 71.031 applies in both state and federal courts. *Id.*; *Burdett v.*

*Remington Arms Co., L.L.C.*, 854 F.3d 733, 736 (5th Cir. 2017). In Texas:

> (a) An action for damages for the death or personal injury of a citizen of this state,
> of the United States, or of a foreign country may be enforced in the courts of
> this state, although the wrongful act, neglect, or default causing the death or
> injury takes place in a foreign state or country, if:
>> (1) a law of the foreign state or country or of this state gives a right to
>> maintain an action for damages for the death or injury;
>> (2) the action is begun in this state within the time provided by the laws of
>> this state for beginning the action;
>> (3) for a resident of a foreign state or country, the action is begun in this
>> state within the time provided by the laws of the foreign state or country
>> in which the wrongful act, neglect, or default took place . . . .

TEX. CIV. PRAC. & REM. CODE ANN. § 71.031(a)(1)–(3). Notably, "Section 71.031(a) is not a

jurisdictional bar, but it is a statutory requirement or prerequisite that affects a plaintiff's right to

obtain relief and should be met before a trial court proceeds." *Stevenson*, 608 S.W.3d at 120 (citing

*Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76–77 (Tex. 2000)). Section 71.031 operates as a

codified choice-of-law rule governing the timeliness of actions. *Id.* (citing *Owens Corning v. Carter*,

997 S.W.2d 560, 573 (Tex. 1999)).

A plaintiff who resides in a foreign state must satisfy § 71.031(a)(1)–(3), while a Texas

resident need only satisfy the first two requirements. *Burdett*, 854 F.3d at 737. Here, Plaintiffs are

Texas residents and therefore must only satisfy § 71.031(a)(1)–(2) to seek relief under the statute.

*See id.* (using § 71.031 to resolve a conflict of laws in a products liability case in which a Texas

resident brought an action against a foreign corporation for an accident occurring in Texas); (Dkt.

#4 at p. 1). Section 71.031(a)(2) applies to all personal injury actions in Texas and includes a time

limitation to prevent forum shopping. *Stevenson*, 608 S.W.3d at 120. "Both statutes of limitations and statutes of repose serve to limit the amount of time under which suit may be brought, and a plaintiff bringing suit under § 71.031 must satisfy not only the statute of limitations but also the statute of repose." *Id.* As the Fifth Circuit observed in *Hyde*, Texas law requires resident plaintiffs to "establish under subsection (a)(2) that [their] action was instituted in Texas 'within the time provided by the laws of [Texas] for beginning the action.'" *Hyde*, 511 F.3d at 511–12 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 71.031(a)(2)). Critically, that includes the time provided by Texas's statute of repose. *Id.*

Yet Plaintiffs submit that § 71.031 is inapplicable to these facts. Plaintiffs interpret § 71.031(a) to apply only when the injury itself occurs outside of Texas (Dkt. #21 at pp. 3–4). So, the argument goes, § 71.031 is inapposite here because Mr. Brown's injury occurred in Texas (Dkt. #21 at pp. 3–4).[4] But that is not what the statute says. Section 71.031(a) does not require the *injury* to occur outside of Texas for § 71.031(a)(1)–(3) to apply. The bare language of the statute makes that much clear. TEX. CIV. PRAC. & REM. CODE ANN. § 71.031(a) (allowing a Texas court to enforce an action for the death or personal injury of a Texas citizen "although the *wrongful act, neglect, or default causing* the death or injury takes place in a foreign state or country") (emphasis added). Clearly, the injury itself need not occur outside the state of Texas for § 71.031 to apply. Instead, it is enough if the conduct *causing* the injury occurs out of state. Any other reading offered by Plaintiffs would run afoul of fundamental principles of statutory interpretation. *See, e.g.*, *Duncan v.*

---

[4] Ironically, by advancing this argument, Plaintiffs seem to abandon their prior stance that the injury occurred in Oklahoma, not Texas (Dkt. #4 at pp. 3–4) (claiming that the car struck a defective bridge joint in Oklahoma, causing the accident at issue); (Dkt. #10 at p. 8) ("Plaintiff Jeffrey Brown was operating his 2000 Peterbilt Model 379 tractor (the "Tractor") *wholly within the State of Oklahoma* when the Tractor struck a bridge abutment *on the Oklahoma side* of the Red River Bridge on State Highway 78 *in Oklahoma*.") (emphasis added).

*Walker*, 533 U.S. 167, 174 (2001) ("'[i]t is our duty to give effect, if possible, to every clause and word of a statute.'") (quoting *United States v. Menasche*, 348 U.S. 528, 538–39 (1955)). For instance, the crux of Plaintiffs' argument is that § 71.031 is only applicable when the injury—and nothing else—occurs outside of Texas. But that reading would render the words "wrongful act, neglect, or default causing" in the statute mere surplusage. That is not how courts have ever read statutes. And today is no exception.

Here, in short, "the *defect causing* the injury" occurred out of state. TEX. CIV. PRAC. & REM. CODE ANN. § 71.031(a). Thus, § 71.031 applies. This is a products liability action in which Plaintiffs assert that the Tractor that PACCAR sold was "defective," "unreasonably dangerous," and "not reasonably crashworthy" as "designed, manufactured, marketed, assembled, and/or tested" (Dkt. #4 at ¶¶ 15–22). Notably, however, all of those acts occurred outside of Texas (Dkt. #5 at p. 10). PACCAR designed the cab structure in California (Dkt. #5 at p. 10). PACCAR tested the Tractor in Washington (Dkt. #5 at p. 10). PACCAR manufactured and assembled the Tractor in Tennessee (Dkt. #5 at p. 10). Finally, PACCAR sold the Tractor in Arizona (Dkt. #5 at p. 10).

The Fifth Circuit interpreted § 71.031 in a factually similar case, *Burdett v. Remington Arms Co., L.L.C.* 854 F.3d at 735. There, the plaintiff injured himself when his rifle "suddenly discharged, firing a bullet through his foot." *Id.* at 734. The plaintiff was a Texas resident and the injury occurred in Texas. *Id.* Further, the defective rifle was manufactured out of state, in New York, where the plaintiff argued the conduct causing the injury occurred. *Id.* The plaintiff purchased the rifle from a reseller in Georgia. *Id.* Thus, the Fifth Circuit conducted a choice-of-law analysis to determine whether New York or Texas law applied. *Id.* at 735. Applying § 71.031 because the conduct causing the plaintiff's injury—the manufacturing of the rifle—occurred out

of state, the court determined that Texas law applied. *Id.* at 736–37. Thus, the Fifth Circuit affirmed the district court's determination that Texas's statute of repose time-barred the plaintiff's claims. *Id.*

Here, the Court's choice-of-law analysis is no different. Like the plaintiff in *Burdett*, Plaintiffs are Texas residents and Mr. Brown was injured in Texas (Dkt. #1 at p. 2; Dkt. #5 at p. 8). Like the rifle in *Burdett*, the Tractor at issue in this case was manufactured, assembled, and later sold out of state (Dkt. #5 at p. 10). Following the Fifth Circuit's analysis in *Burdett*, the Court determines that the conduct causing Mr. Brown's injury—the alleged defective design, manufacture, assembly, marketing, and testing of the Tractor—occurred out of state (*See* Dkt. #4 at pp. 4–6; Dkt. #5 at p. 10). Accordingly, the Court will apply § 71.031.

Nevertheless, Plaintiffs insist that because "PACCAR introduced its product into the stream of commerce" in Arizona, "there is no reason to apply the Texas statute of repose" (Dkt. #10 at p. 17). The Court disagrees. Although the Tractor was released to a dealership in Arizona, the Fifth Circuit, applying Texas law, has held that Texas's statute of repose—codified in Texas Civil Practice and Remedies Code § 16.012(b)—applies even when the product enters commerce in a foreign state. *See, e.g.*, *Burdett*, 854 F.3d at 737 (barring an action pursuant to Texas's statute of repose when the product's earliest sale could be tracked to Georgia before being purchased by a Texas resident).

Yet still, in their final sur-reply, Plaintiffs submit that *Ford Motor Co v. Parks* precludes the Court from applying Texas's statute of repose (Dkt. #19) (citing *Ford Motor Co. v. Parks*, 691 S.W.3d 475 (Tex. 2024)). There, the Texas Supreme Court contemplated the question of *when* § 16.012(b) is triggered to time bar an action. *Parks*, 691 S.W.3d at 481. The court held that in cases

involving the sale of vehicles, the event triggering application of § 16.012(b) is the date when the dealership takes possession of the vehicle. *Id.* at 483–84. As far as the Court can tell, Plaintiffs' reading of *Parks* goes like this: the applicable statute of repose is that of the state in which the vehicle was sold—i.e., if delivery of the vehicle determines *when* the repose period begins, *where* the vehicle was sold also determines which state's statute of repose applies (Dkt. #19 at pp. 2–3). That is to say, for example, if a vehicle is sold in Arizona, Arizona law applies as to whether a repose period is triggered. But *Parks* does not stand for that proposition. In fact, Plaintiffs' final sur-reply concedes that the issue in *Parks* was *when* Texas's statute of repose clock began to tick, not *where* (*See* Dkt. #19 at p. 2). Yet, Plaintiffs go on to argue that *Parks* is instructive on the issue the Court addresses in this case—the crux of which is a conflict-of-laws analysis (Dkt. #19 at pp. 2–3). The issue here is which state's law governs. The choices are these: Arizona or Texas. *Parks* offers no guidance for, much less an answer to, this question. Put simply, that case has nothing to say regarding the proper conflict-of-laws inquiry for purposes of determining whether a statute of repose applies to bar an action. Indeed, the *Parks* court never conducted a conflicts analysis because the facts were purely local. Thus, Plaintiffs' reliance on *Parks* is misplaced.

The Court concludes that "even if [PACCAR's] wrongful acts occurred in [Arizona] or another state, in order to prevail in the Texas action, [Plaintiffs] would nevertheless be required to establish that [their] Texas suit was filed within the time permitted under the Texas statute of repose for products liability actions." *Hyde*, 511 F.3d at 512. Accordingly, § 71.031(a)(2) directs the Court to apply Texas's statute of repose for products liability actions. *See* Tex. Civ. Prac. & Rem. Code Ann. § 71.031(a)(2).

## II.    The Texas Statute of Repose

Having determined that § 71.031(a)(2) requires the Court to apply Texas's statute of repose for products liability actions, the Court next evaluates whether the statute bars Plaintiffs' claims. Texas Civil Practice and Remedies Code § 16.012(b) provides that "a claimant must commence a products liability action against a manufacturer or seller of a product before the end of 15 years after the date of the sale of the product by the defendant." The code defines "products liability action" as "any action against a manufacturer or seller for recovery of damages or other relief for harm allegedly caused by a defective product." TEX. CIV. PRAC. & REM. CODE ANN. § 16.012(a)(2). The statute of repose "runs from a specified date without regard to accrual of any cause of action." *Stevenson*, 608 S.W.3d at 121. For vehicles, the statute of repose is triggered when the vehicle is released from the manufacturer to the dealership. *See Camacho v. Ford Motor Co.*, 993 F.3d 308, 313 (5th Cir. 2021).[5]

Texas's statute of repose operates as a clock, which starts on the date that the vehicle is released from the manufacturer to the dealership. *See Camacho*, 993 F.3d at 313. The repose clock expires fifteen years after the date of sale. TEX. CIV. PRAC. & REM. CODE ANN. § 16.012(b). If an action is commenced within that fifteen-year period, the statute does not bar the action. *Id.* If, on the other hand, a plaintiff does not bring a claim within that fifteen-year period, the statute forbids the action. *Id.* While seemingly clear cut in many cases, the date that a plaintiff is said to have commenced an action requires some analysis in situations in which a plaintiff has brought multiple claims in different jurisdictions. That is the case here. As PACCAR observes, this is not Plaintiffs'

---

[5] "Repose differs from limitations in that repose not only cuts off rights of action after they accrue but can cut off rights of action before they accrue." *Stevenson*, 608 S.W.3d at 121. "The purpose of a statute of repose is to provide certain parties with absolute protection from the burden of indefinite potential liability." *Id.*

first attempt to seek redress for Mr. Brown's injuries (Dkt. #5 at p. 1). Plaintiffs filed their first lawsuit against PACCAR on November 12, 2019, in Denton County, Texas (Dkt. #5-1). Plaintiffs voluntarily dismissed that suit (Dkt. #5-3). Then, on January 12, 2021, Plaintiffs filed suit against PACCAR in Oklahoma state court (Dkt. #5-4). On May 23, 2022, the Oklahoma Supreme Court ordered dismissal of the case for want of jurisdiction (Dkt. #5-7, 5-10). Finally, Plaintiffs filed the instant matter in Texas state court on July 11, 2023, after which PACCAR removed to this Court (Dkt. #1). This in mind, the threshold question becomes: when did Plaintiffs "commence" their suit within the meaning of the Texas statute of repose? The answer is July 11, 2023—the date on which Plaintiffs filed *this* lawsuit in Texas state court (Dkt. #4 at p. 1).

Here, Section 16.012(b) requires Plaintiffs to commence their products liability action "before the end of 15 years after the date of the sale" of the Tractor by PACCAR. TEX. CIV. PRAC. & REM. CODE ANN. § 16.012(b). PACCAR released the Tractor to Rush Truck Center on November 30, 1999, thereby triggering the fifteen-year statute of repose (Dkt. #4 at ¶ 8). *See id.*; *Stevenson*, 608 S.W.3d at 121; *Camacho*, 993 F.3d at 315. Therefore, Plaintiffs had until November 30, 2014, to timely file their products liability action against PACCAR. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.012(b). Plaintiffs did not commence this action until July 11, 2023—more than eight years after the statutory period expired (Dkt. #1 at p. 1).[6] Accordingly, Plaintiffs' claims are barred by the Texas statute of repose for products liability actions.

Based on the Court's holding that the statute of repose bars Plaintiffs' claims, the Court need not address PACCAR's statute of limitations defense.

---

[6] Plaintiffs do not contest whether July 11, 2023 is the proper date to stop the clock on Texas's statute of repose. To be sure, however, the Court notes that even by stopping the clock on November 12, 2019—the date of Plaintiffs' earliest-filed lawsuit—Plaintiffs still missed the repose window by nearly five years (Dkt. #5 at pp. 1, 8 n.9).

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion to Dismiss (Dkt. #5) is hereby **GRANTED.**

It is further **ORDERED** that Plaintiffs' claims are **DISMISSED with PREJUDICE.**

**IT IS SO ORDERED.**

**SIGNED this 21st day of November, 2024.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE